DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS-ST. JOHN

IN ADMIRALTY

| | |
|---|---|
| **Merchants Commercial Bank**, <br><br> Plaintiff, <br><br> v. <br><br> **M/V GENERAL II** (Official No. 1029340), her engines, boilers, machinery, etc., *in rem*; and **Global Marine, LLC**, **Stanley Hedrington**, and **Carmen Wesselhoft Hedrington**, *in personam*; <br><br> Defendants. | No. 3:20-cv-____ |

# VERIFIED COMPLAINT

This action for breach of contract and foreclosure of a First Preferred Ship Mortgage under 46 U.S.C. § 31325 constitutes an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

## Parties

1. Plaintiff **Merchants Commercial Bank** ("**Merchants**") is a U.S. Virgin Islands banking corporation with a principal place of business located at 4608 Tutu Park Mall, Ste. 100, St. Thomas, VI 00802-1816.

2. Defendant **M/V GENERAL II** (Official No. 1029340), her engines, boilers, machinery, *etc.* was and is a 95-foot, 233-gross ton, steel hull vessel bearing Official No. 1029340 and Hull I.D. No. 169 that was built by Allied Shipyard, Inc. in Larose, Louisiana, and completed in 1995 (the "**Vessel**").

23387.0125

3. Defendant **Global Marine, LLC** ("**Global Marine**") is a U.S. Virgin Islands limited liability company with, upon information and belief, an address of 102 Cruz Bay Quarter, St. John, VI 00830. Global Marine is the owner of the Vessel.

4. Defendant **Stanley Hedrington** is an individual and, upon information and belief, a citizen of the U.S. Virgin Islands.

5. Defendant **Carmen Wesselhoft Hedrington** is an individual and, upon information and belief, a citizen of the U.S. Virgin Islands. Stanley Hedrington and Carmen Wesselhoft Hedrington may be referred to collectively as the "**Guarantors**".

## Jurisdiction and Venue

6. This Court has original jurisdiction over this matter under 48 U.S.C. § 1612(a), 28 U.S.C. § 1333(1), and 46 U.S.C. § 31325(c).

7. The Vessel is within the District of the Virgin Islands or will be within the District of the Virgin Islands while this action is pending.

8. All of the Vessel's engines, boilers, machinery, covers, masts, bowsprits, boats, spars, anchors, cables, chains, rigging, tackle, capstans, fittings, tools, pumps and pumping equipment, gear, apparel, furniture, equipment, spare parts, supplies, accessions and accessories and all other appurtenances thereunto appertaining and belonging are located, or are believed to be located, on the Vessel.

*Merchants Commercial Bank v. M/V General II,* et al.
3:20-cv-____
Page 3 of 15
Verified Complaint

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (3) because the Vessel is berthed at St. John, U.S. Virgin Islands, which is within the Division of St. Thomas-St. John; and because the natural Defendants are subject to personal jurisdiction in the United States Virgin Islands at the time of the commencement of this suit.

## Facts

### The Ship Mortgage

10. On May 21, 2014, Global Marine executed a First Priority Ship Mortgage (the "**Ship Mortgage**") over the Vessel; specifically:

> The whole (100%) of the vessel whose name is M/V GENERAL II, having an Official Number of 1029340 and a Hull Number of 169, which is documented under and pursuant to the laws of the United States of America, together with all of its engines, boilers, machinery, covers, masts, bowsprits, boats, spars, anchors, cables, chains, rigging, tackle, capstans, fittings, tools, pumps and pumping equipment, gear, apparel, furniture, equipment, spare parts, supplies, accessions and accessories and all other appurtenances thereunto appertaining and belonging, whether now owned or hereafter acquired, whether on board or not and also any and all additions, improvements and replacements hereafter made in, for or to such vessel, or any part thereof, or in or to its equipment and appurtenances aforesaid, and all earnings, hire, freight or other monies obtained through the use and operation thereof and all proceeds of the foregoing[.]

The Ship Mortgage secured a Promissory Note in the amount of $235,000.00 under a Term Loan Agreement between Merchants and Global Marine, also dated May 21, 2014. The Ship Mortgage was recorded on May 30, 2014 at Batch 20044100 as Doc. # 4. A copy of the Ship Mortgage is attached as **Exhibit 1**.

*Merchants Commercial Bank v. M/V General II,* et al.
3:20-cv-____
Page 4 of 15
Verified Complaint

## The New Loan Agreement

11. On or about August 25, 2014, Global Marine executed a new Term Loan Agreement with Merchants (the "**New Loan Agreement**") whereby Merchants agreed to loan Global Marine the principal amount of $430,000.00.  A copy of the New Loan Agreement is attached as **Exhibit 2**.

12. Under the terms of the New Loan Agreement, Global Marine agreed to repay the new loan in sixty-three (63) consecutive monthly payments beginning on October 5, 2014 and ending on the maturity date, December 5, 2019.  The first three (3) payments were interest-only payments, and the remaining sixty (60) payments were comprised of principal and interest based on a fifteen (15) year amortization schedule, with a final installment of the remaining outstanding principal balance of the loan, plus interest, due at maturity.

13. The New Loan Agreement also provided that any unpaid amounts that became due under that agreement (whether upon maturity or by acceleration of the loan) would bear interest at a default rate of five percent (5.00%) above the applicable rate of interest (the "**Default Rate**").

## The New Note

14. Consistent with the terms of the New Loan Agreement, Global Marine executed and delivered to Merchants a promissory note dated August 25, 2014 (the "**Note**"), promising to pay the principal amount of $430,000.00 plus interest at a variable annual rate equal to the Prime Rate plus a 3.00% "Prime Spread".  A copy of the New Note is attached as **Exhibit 3**.

### The Amended Ship Mortgage

15.  To secure payment of the New Note, Global Marine executed an Amendment to First Preferred Ship Mortgage dated May 21, 2014 (the "**Amended Ship Mortgage**").  The Amended Ship Mortgage acknowledged the new indebtedness under New Loan Agreement and the New Note, and it incorporated that indebtedness into the the security interest held by Merchants under the Ship Mortgage.  The Amended Ship Mortgage was recorded on August 26, 2014 in Batch 22197600 as Doc. No. 4 (as re-recorded on January 21, 2015 in Batch 25035500 as Doc. No. 7).  A copy of the Amended Ship Mortgage is attached as **Exhibit 4**.

16.  (The Ship Mortgage, the New Loan Agreement, the New Note, and the Amended Ship Mortgage may be referred to collectively hereinafter as the "**Loan Documents**".)

### The Hedrington Guaranty

17.  To further secure repayment of the New Note, the Guarantors executed a personal guaranty dated August 25, 2014 (the "**Hedrington Guaranty**").  A copy of the Hedrington Guaranty is attached as **Exhibit 5**.

18.  Under the terms of the Hedrington Guaranty, the Guarantors unconditionally agreed that (1) they would promptly perform and observe every term and condition of the New Loan Agreement that was to be performed or observed by Global Marine; and (2) all sums that either were payable or became payable under the New Loan Agreement and all other sums that Global Marine

owed to Merchants would be paid promptly in full when due, together with interest and any legal costs or other expenses paid by Merchants in connection with that agreement.

19.   Furthermore, the Guarantors unconditionally agreed that Merchants could declare the obligations, liabilities, and indebtedness of Global Marine to be immediately due and payable; and that, in the event of any such declaration, those obligations would become due and payable by the Guarantors.

## The Default under the Loan Documents

20.   On December 5, 2019 (the maturity date of the loan), Global Marine defaulted under the terms and conditions of the New Loan Agreement and the New Note, in that monthly installments of principal and interest became due pursuant to those instruments and remained unpaid.

21.   The Guarantors likewise defaulted under the terms of the Hedrington Guaranty by failing to cure Global Marine's default under the Loan Documents or otherwise answer for Global Marine's indebtedness under the New Note.

22.   On March 2, 2020, Merchants sent a notice of default to Global Marine and the Guarantors, declaring the loan to be in default under the terms of the Loan Documents, and advising Global Marine and the Guarantors that failure to cure the default would result in foreclosure of the Ship Mortgage, as amended.  A copy of the notice of default is attached as **Exhibit 6**.

23.   To date, Global Marine has failed to cure its default, and it remains in default under the terms of the Loan Documents.

*Merchants Commercial Bank v. M/V General II,* et al.
3:20-cv-____
Page 7 of 15
Verified Complaint

24. Likewise, the Guarantors remain in default under the terms of the Hedrington Guaranty for failing to cure Global Marine's default or answer for Global Marine's indebtedness under the New Note.

25. Pursuant to the terms of the Loan Documents, Merchants elected to accelerate the unpaid principal sum and all unpaid accrued interest remaining under the Loan Documents and to declare those amounts to be immediately due and payable.

26. All conditions precedent to the maintenance of this action have occurred, been performed, or been excused.

## Causes of Action

### Count One:  Foreclosure *in rem* of Maritime Lien
### 46 U.S.C. § 31325(b)(1) & (2)(A)
### *(v. The Vessel)*

27. Merchants realleges the facts set forth in Paragraphs 1-26 and incorporates them by reference.

28. The Ship Mortgage is a First Preferred Ship Mortgage.

29. Merchants is the holder for value of the Ship Mortgage, as amended by the Amended Ship Mortgage, for the full amount of the indebtedness under the Loan Documents, including principal, accrued interest, per diem interest, advances, fees (including attorneys' fees), costs (including legal costs), and late charges.

30. Global Marine is in default under the terms and conditions of the Loan Documents for failure to make timely payment of principal and interest when due. 46 U.S.C. § 31325(b).

31. Merchants is entitled to foreclosure of the Ship Mortgage against the Vessel, the sale of the Vessel to satisfy the amounts due under the New Note, and the recovery of any deficiency from Global Marine and the Guarantors. 46 U.S.C. § 31325(b)(1) & (2)(A).

32. Under the terms of the Loan Documents, Merchants is entitled to be reimbursed for reasonable attorneys' fees and other expenses incurred by Merchants to enforce payment of the indebtedness under the Loan Documents or that are incidental to foreclosure of the Ship Mortgage, as amended, including Substitute Custodian fees, expense of port risk insurance, U.S. Marshal's Service fees, advertising costs for a sale of the Vessel, *custodia legis* costs, and pre-judgment interest at the Default Rate.

## Count Two: Breach of Contract
## The New Loan Agreement
### *(v. Global Marine)*

33. Merchants realleges the facts set forth in Paragraphs 1-32 and incorporates them by reference.

34. The New Loan Agreement imposed an absolute duty upon Global Marine to repay the principal sum under the New Note, plus interest, in consecutive monthly payments.

35. The culpable and unjustified failure of Global Marine to make monthly payments as agreed under the New Loan Agreement deprives Merchants of the substantial benefit of its bargain contemplated in that agreement.

36. Global Marine failed to cure its breach of the New Loan Agreement.

37. The failure of Global Marine to make monthly installment payments as agreed constitutes a material breach of their absolute duty to perform under the term of the New Loan Agreement.  Restatement (Second) of Contracts § 235(2) & 241.

38. Under the terms of the New Loan Agreement, Merchants is entitled to be reimbursed for reasonable attorneys' fees and other expenses incurred by Merchants due to the breach of Global Marine's obligations under that agreement.

## Count Three:  Breach of Contract
## The New Note
### *(v. Global Marine)*

39. Merchants realleges the facts set forth in Paragraphs 1-38 and incorporates them by reference.

40. The New Note imposed an absolute duty upon Global Marine to repay all amounts that became due under that instrument, including the principal sum of $430,000.00, plus accrued interest, per diem interest, advances, fees (including attorneys' fees), costs (including legal costs), and late charges.

41. The culpable and unjustified failure of Global Marine to repay the amounts due under the New Note as agreed deprives Merchants of the substantial benefit of its bargain as contemplated by that instrument.

42. Global Marine failed to cure its breach of the New Note.

43. The failure of Global Marine to repay all amounts, including principal and interest, that became due under that instrument as agreed constitutes a material breach of their absolute duty to perform under the New Note. Restatement (Second) of Contracts § 235(2) & 241.

44. Under the terms of the New Note, Merchants is entitled to be reimbursed for reasonable attorneys' fees and other expenses incurred by Merchants to enforce payment of the New Note or incidental to foreclosure *in rem* of the Vessel.

## Count Four:  Breach of Contract
## The Hedrington Guaranty
### *(v. the Guarantors)*

45. Merchants realleges the facts set forth in Paragraphs 1-44 and incorporates them by reference.

46. The Guarantors executed the Hedrington Guaranty, unconditionally promising to assume the obligations under the New Note if Global Marine failed to perform the obligations under that instrument.

47. Global Marine has in fact failed to perform the obligations under the New Note.

48. Under the terms of the Hedrington Guaranty, Merchants is entitled to collect all sums due under the New Note from the Guarantors.

*Merchants Commercial Bank v. M/V General II,* et al.
3:20-cv-____
Page 11 of 15
Verified Complaint

49. At the time of the execution of the Hedrington Guaranty, the Guarantors reasonably expected that the Hedrington Guaranty would induce Merchants to extend credit to Global Marine.

50. In reliance on the execution of the Hedrington Guaranty by the Guarantors, Merchants was induced to extend credit to Global Marine.

51. The Guarantors breached the terms of the Hedrington Guaranty by failing to answer for Global Marine's debt under the New Note, thereby resulting in monetary damages to Merchants.  Restatement (Second) of Contracts § 88 (1981); Restatement (Third) of Suretyship & Guaranty § 9 (1996).

52. The failure of the Guarantors to answer for the debt of Global Marine as agreed constitutes a material breach of their absolute duty to perform under the Hedrington Guaranty.  Restatement (Second) of Contracts § 235(2) & 241.

53. The terms of the Hedrington Guaranty provide that the Guarantors waive all defenses that might be available either to discharge their obligations under the Hedrington Guaranty or to discharge the obligation of Global Marine under the New Note.

54. Under the terms of the Hedrington Guaranty, Merchants is entitled to be reimbursed for reasonable attorneys' fees and other expenses incurred by Merchants.

## Prayer for Relief

**WHEREFORE**, Merchants requests the following relief:

  a. That Judgment be entered in favor of Merchants and against the Vessel *in rem* in the amount of the indebtedness under the New Note, plus default interest, costs, expenses, and attorneys' fees;

  b. That Judgment be entered in favor of Merchants declaring that Global Marine defaulted under the terms of the New Loan Agreement, New Note, and Amended Ship Mortgage, thereby entitling Merchants to exercise all of the remedies provided for in those instruments;

  c. That Judgment be entered in favor of Merchants declaring that Global Marine is indebted to Merchants for unpaid principal under the New Note, plus interest, costs, expenses, and attorneys' fees;

  d. That Judgment be entered in favor of Merchants declaring that the Guarantors defaulted under the terms of the Hedrington Guaranty, thereby entitling Merchants to exercise all of the remedies provided for in that instrument;

  e. That Judgment be entered in favor of Merchants declaring that the Guarantors are indebted to Merchants for unpaid principal under the New Note, plus interest, costs, expenses, and attorneys' fees;

  f. That process issue according to the practice of this Court in case of Admiralty and Maritime Jurisdiction against the Vessel, her engines, boilers, machinery, covers, masts, bowsprits, boats, spars, anchors, cables, chains, rigging, tackle, capstans, fittings, tools, pumps and pumping equipment, gear, apparel, furniture, equipment, spare parts, supplies, accessions and accessories and all other appurtenances thereunto appertaining and belonging, whether now owned

or hereafter acquired, whether on board or not and also any and all additions, improvements and replacements hereafter made in, for or to such Vessel, or any part thereof, or in or to its equipment and appurtenances aforesaid, and all earnings, hire, freight or other monies obtained through the use and operation thereof and all proceeds of the foregoing;

      g.      That the Vessel, her boilers, her engines, boilers, machinery, covers, masts, bowsprits, boats, spars, anchors, cables, chains, rigging, tackle, capstans, fittings, tools, pumps and pumping equipment, gear, apparel, furniture, equipment, spare parts, supplies, accessions and accessories and all other appurtenances thereunto appertaining and belonging, *etc.* be sold by the United States Marshal for the District of the Virgin Islands, and that the proceeds of the sale be applied toward any Judgment rendered in favor of Merchants;

      h.      That Judgment be entered in favor of Merchants and against Global Marine and the Guarantors for any deficiency that may remain after the sale of the Vessel;

      i.      That an Order appointing a Substitute Custodian for the Vessel be entered, if requested by Merchants, during the pendency of this action; and

      j.      That the Court award Merchants such other and further relief as is just and equitable.

**This space left intentionally blank.  Signature block to follow.**

*Merchants Commercial Bank v. M/V General II,* et al.
3:20-cv-____
Page 14 of 15
Verified Complaint

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  June 3, 2020 | /s/ A.J. STONE III, ESQ.<br>A.J. Stone III, Esq.<br>V.I. Bar No. 823<br>BOLTNAGI PC<br>Merchants Financial Center<br>4608 Tutu Park Mall, Ste. 202<br>St. Thomas, VI  00802-1816<br>(340) 774-2944 Telephone<br>(340) 776-1639 Facsimile<br>AStone@vilaw.com<br><br>Attorneys for **Merchants Commercial Bank** |

**This space left intentionally blank.  Verification page to follow.**

# Verification

I, **James E. Crites**, make this Verification pursuant to 28 U.S.C. § 1746(2):

1. I am the President of Merchants Commercial Bank.
2. I have reviewed the foregoing Verified Complaint.
3. I know or believe that all allegations in the Verified Complaint are true and correct to the best of my knowledge.
4. The source of my knowledge and the grounds for my belief are (1) my personal knowledge, and (2) the records maintained by Merchants Commercial Bank in its ordinary course of business.

I verify under penalty of perjury that the foregoing is true and correct.

Merchants Commercial Bank

Dated: June 3, 2020   By: _____
James E. Crites
President